This case is here on an appeal from a district court grant of summary judgment in a case involving an insurer's duty to defend. Let me ask one question as a preliminary matter. You apparently got three insurers, two of whom the district judge said they have an obligation to protect the insurer. Is that correct? That's correct. The fact that you've appealed suggests to me that the amount of their obligation to defend does not cover the entire defense. Is that why we're here? The entire defense has not been covered, Your Honor. And also, the issues involving the other insurers remain in dispute to some extent. There's disagreement about how much they owe, when they begin to pay, and a variety of other things.  Two insurers were ordered to defend. Well, I don't know if it's material to this case, but there could be other insurance policies, too. And is that relevant at all? In other words, you might have got reimbursement from some other insurance policies, not just from these three, because there could be other policies covering other risks. But I don't know if that's relevant. I don't believe so, Your Honor. There's no other policies of record, and there's no evidence to that effect. Okay. If that were to happen, that would be a matter of equitable contribution among insurers, right? Yes, it would, Your Honor. It would not affect their obligations to Seagate. Okay. So the issue on which Judge Ware held that ASIC, American International Specialty Lines, was not obligated to defend, was based on the application of an exclusion. And the exclusion provides that claims arising out of trade secret misappropriation are not subject to the duty to defend that otherwise exists. The district court said that in all respects, this case arises out of trade secret misappropriation, and that's simply incorrect. There are a number of formally pleaded causes of action, claims for relief, in the underlying complaint that do not involve trade secret misappropriation. What do we do with the definition of the term arises out of? I mean, that's a — that may be the key to the scope of the exclusion. Obviously, in some sense, they arise out of. I mean, we've got a — the core of the dispute appears to be patent infringement and maybe misappropriation of trade secrets. Everything is related to that, and your argument has to be that although there's some relationship, arise out of doesn't get you there. Well, actually, Your Honor, it's our view that the allegations and the claims that we allege triggered the duty to defend are not related to do not arise out of. But, Your Honor, I think we'd like to — But in some sense, of course, they are related. I mean, the narrative that's told in the complaint is that Seagate learned of this technology, misappropriated this technology, infringed on the patent, and then trumpeted in a press release what a wonderful thing they've got. That's the story, and it may or may not turn out to be true, but that's the story. Let me address in two specific ways why the matters that we allege trigger the duty to defend do not arise out of. First, it's very clear, and we've pointed out on page 22 of our brief, there are numerous instances in which the allegations in the complaint refer both to misappropriation of confidential information and or trade secret information. Yeah, but that also turns then on, if we're going to go down your road, on what the press releases were, because where Judge Ware was going, he was saying, well, these all come from the patent and that sort of exception. But you're going on trade libel, correct? Disparagement, Your Honor. Right. And that disparagement would have to go from what was said in the press. That's the allegation, Your Honor. Okay. And as I read your complaint, I was looking at, excuse me, subsection G, paragraph 59, 60, and 62, and those are the only press releases that I see. And maybe I'm wrong, but those are the press releases. I don't see that disparagement in those releases. Let me address that point, Your Honor. If you take a look at paragraph 65 in the amended complaint that appears on page 89 of the excerpts of record, or 61 in the original complaint, it appears at one page. Yeah, and it starts out based on its press releases. That's why I went back to paragraph 59, 60, and 62. Those are the only press releases. And I was trying to figure out what in those press releases would cause this business to be a disparagement. A couple points there, Your Honor. First of all, the duty to defend extends even to allegations that are groundless, false, or fraudulent. Seagate doesn't have to prove that it actually did what it's accused of doing. But the allegation in paragraph 61 and paragraph 65, it does not literally say that in those press releases. One way to read paragraph 61 and paragraph 65 is that it is an interpretation by the plaintiff. What they say is, based on its press releases, Seagate is claiming. So that's not an allegation that's limited to a claim that Seagate said those things in the press releases. The plaintiff is saying, based on what Seagate has said, we accuse Seagate of having disparaged our technology. Well, let's suppose, maybe I'm confused, let's suppose that Seagate has a technology, whatever it is, and they decide that they want to take after Convalve. Is that how you say it? Convalve, Your Honor. Convalve. They want to take after Convalve for whatever reason. They just say, Seagate's technology is better than Convalve. Is that a disparagement that could be actionable? Yes, it is. That's an unfavorable comparison of the two technologies. And the way it's pleaded here, it's even more specifically such. By Seagate saying my technology is better than yours, that's a disparagement? The way it's pleaded here, Your Honor, what they say is that even though Seagate's technology is inferior, Seagate alleges that its technology is the equivalent or is superior. The disparagement is involved in the unfavorable comparison. So they're saying our inferior technology is the equal or it's better than yours. That is a disparaging comparison. Because you've alleged that it's inferior. They have alleged that our technology is inferior. They do that. Yeah. But you're saying that Seagate, you're saying because Seagate has inferior technology, alleging that it's better than Convalve, that's where the disparagement is. That is an unfavorable comparison. That is a disparagement. On your theory of disparagement, it's not necessary that yours be inferior or superior. The underlying facts don't matter. The question is, are you saying that yours is better? And once you say yours is better, that's disparagement. That's your definition. If the allegation is false. But in this case, the allegation of the complaint is even more specific because it does allege that Seagate was portraying inferior technology as the equal or better. Allegation of Convalve. That's correct, Your Honor. So that's what they're suing for. But I want to make another point with respect to Judge Fletcher's arising out of issue. This allegation of disparagement, it is not. Let me stop there just a second. You're relying then on paragraph 65. 65 in the amended complaint, 61 in the original complaint. Yeah. Well, in paragraph 65, it says, and this is, I think, what you're looking at. Let me explain. What they say in the first half of that sentence is that their technology is superior. They have a problem there. They're alleging that the technology was misappropriated. So they can't say that Seagate took the technology and that Seagate's technology is inferior. That wouldn't make sense. So they're conscious of the nonsense of their allegation. So that's why they put that clause. They say, although they misappropriated, still, they didn't get it right and their technology is no good. So that clause is simply there because the plaintiff, Convalve, was acknowledging that its accusation didn't make sense. There is an accusation of misappropriation. But nonetheless, they say that our technology is no good. So that's what they're trying to do. They're covering their tracks there. But on that point about arising out of. Yeah. But I think this, Judge Brunetti's question really went to the arising out of. That's right. Yeah. First of all, it's quite clear that Seagate did not have to misappropriate to allege, to disparage. Excuse me. Yeah, but I guess my problem, I agree with that. My confusion is, and maybe you can help me, is that but for the fact that Compact was approached by Convalve, and Convalve solicited them to use their technology, but for that fact, and the fact that Compact said, gee, I'd like to work with you, but you've got to work with Seagate. And then Seagate eventually gets to get the technology of Convalve and put it on a disk and then the rest is history. But for all that, nothing would happen. And what you're saying is, let's put that off to the side and let's just say now that Seagate has gone through all this misappropriation, because you don't deny in the complaint you're saying that they took our technology. You know, they told us to give us the technology. I'll put it on a disk. I'm going to test it out. Despite all that, the fact that now Seagate comes along and says, gee, our disks are better than Convalve's, that that's a separate issue not arising out of that exception. That's right, Your Honor. And that's true. First of all, that's true literally because the allegation is in case now. Now that we're there, I think we all know the ground. Now, give me the case you're relying on for this. The cases we rely on are the cases that establish the way the duty to defend is applied, cases such as Montrose and the other cases from the California Supreme Court. I understand that. And I understand how broad the duty to defend in California is, why it is now. The problem is we've got to narrow it down to the specifics case. You have a specific case like ours or a case that you can equate factually that shows that this started out because due to the circumstances of this case, the technology was misappropriated. Seagate could have done the same thing without the misappropriation. They just could have barked that their technology was better than yours and it would have been over, right? No big deal. Well, that's what we have, Your Honor. The allegation is not that because you took our technology, you disparaged us. That's not what it says in paragraph 6165. It says we disparaged them. It makes reference to the fact that although we had taken their technology, our technology was bad. But the disparagement isn't alleged to have arisen out of the taking of the technology. Indeed, as I pointed out earlier, it's inconsistent. The idea that we took their technology and still had bad technology of our own is inconsistent with the idea that arises out of. But there is another point on this arising out of, too, Your Honor. And that has to do with the allegation that we misappropriated both confidential and trade secret information. It's very clear, and we cite numerous examples on page 22 of our opening brief, where it's in the disjunctive, confidential and or trade secret. So there's a clear distinction in the complaint between confidential and trade secret information. The trade secret exclusion only applies to matters that arise out of misappropriation of trade secrets, not matters that arise out of misappropriation of confidential information. But on that theory, as soon as all of a sudden there's something in the complaint about misappropriation of confidential information, even though that might have been misappropriated really as an incidental matter to the misappropriation of trade secret, then you win. But that can't be right. Well, Your Honor, I'm not sure I understand what you're saying, because what's been alleged is that we took both kinds of information. That's correct. And all doubt. What I'm saying is if it may be a circumstance in which you took trade secrets and incidental to the taking of trade secrets, you also took some confidential information. And the mere fact that you're now at a complaint here for confidential information, taking the confidential information, it seems to me on the hypothesis that I just gave you, which you can dispute, but on the hypothesis I just gave you, well, but what you did was centrally you took trade secrets and you took the confidential information merely incidentally. Well, it seems to me that that arose out of, on that fact, on that hypothesis, that arose out of the taking of trade secrets, despite the fact that there are now causes of action for both. Your Honor, that's not a fair reading of the complaint. There is no attribution that one was incidental to the other. And under the duty to defend under cases such as the Conestoga case, 312 F. 3rd, 976 at 981, and the Montrose case, 6 Cal 4th, at 299 and 300, all doubts have to be resolved in our favor, in favor of the duty to defend. And the hypothesis that the confidential information was only incidental to the trade secret information does not appear in the complaint, is not the only way to read the complaint. Well, but there's also the, as I remember, I don't have it in front of me, the exception also talks about allegations. And unless you put an, and the exception covers the allegations, unless you put an allegation in the complaint, you could swallow the exceptions all the time by saying we have this broad, we've got to get, we've got all the, excuse me, the inferences have got to go our way. You still have to have some allegations somewhere. Well, we do. But, Your Honor, under California law, what you just described is precisely how it works. Under Buss v. Superior Court, if there is a single allegation that triggers the duty to defend, the insurer is obligated to defend the entire case. In the Buss case, Your Honor, Jerry Buss was sued for about 30 different things. It was one cause of action that fell within the scope of the duty to defend. The Supreme Court of California held that the insurer's in for a dime, it's in for a dollar. They must defend the whole case. Well, I understand that. I have no problem with defending the whole case once you're in. I'm just saying you've at least got to get one allegation in to get you started. And we clearly have that in two ways, Your Honor. We have it in the disparagement, where it's simply not the case that the disparagement allegation is limited to disparagement arising out of trade secret misappropriation. It just isn't. And it has to be read, if it reasonably can be, the other way. And it can be, Your Honor, because that comment in paragraph 61 about the misappropriation, it's an aside. They say in the first sentence, Seagate is claiming that its technology performs the same functions as Conval's proprietary technology. That is an unequivocal allegation that we are making false statements that disparage their technology. It's not connected to trade secret misappropriation. Well, how do you deal with the one case cited by the other side on the meaning of arising out of? The case is Continental Casualty Company v. City of Richmond. They miscited it. They took me a minute to find it because the citation is 763 rather than 773F2, decided by this Court in 1985. And the question is the scope of the arising out of language under California law. And I'll just read to you from Judge Poole's opinion. California courts consistently have adopted broad definitions of arising from and arising out of. One court, the California court, equating arising out of with origination, growth, or flow from the event. The court is now referring to a case called Hartford Accident, decided by the California Court of Appeal in 1973. The California court added arising out of has been interpreted more broadly than caused by to include the notion of incident to or having connection with. I mean, that's one. That's the sticking point for me. All right, Your Honor. And I think that the reason that you're perceiving a sticking point is because you're inferring a connection that isn't there in the allegations of the complaint. They don't say, that is, Convolve and MIT. They don't say that there's a connection. And all doubts must be resolved in our favor. What they say is that we disparaged. And they also ---- Kennedy, is that there's no connection alleged by Convolve between the stealing or misappropriation of trade secrets and the press releases claiming the Seagate technology is better. Yes, Your Honor. You could have done one without the others. That's true, Your Honor. One did not cause the other. The other allegation could have been done whether they had or whether they hadn't stolen the technology. Absolutely, Your Honor. And I would broaden that by saying not only wasn't it caused by or wouldn't it have to be caused by, it needn't, using the broader definition Judge Fletcher cited, it needn't have arisen out of either. And in fact, what we are accused of is not exclusively argued that way. Remember that under the law of California, as this Court has recognized, when an exclusionary clause is relied on, it must be the case that in all possible worlds, these are the words the California Court of Appeal used, in all possible worlds, the exclusion would bar coverage. Now, I understand that. I'm going to have to do some more reading. But maybe you can help me just one quick second here. In your complaint, paragraphs 59, 60, and 62, unless I'm wrong, these are the only so-called incidences of press releases that could cause a disparagement. Yet, in each of those three, there's never a word comparing Seagate to Conval. Never a word. Now, I understand what's said on page 65, but so what? If we're going to go on the allegations that are the basis of your disparagement, there are no allegations of disparagement in your complaint. Well, Your Honor, this isn't our complaint. This is a complaint against us by the third parties. Yes, okay. Okay? And the important one – I misspoke there. But I'm saying if you're going to rely on what the complaint is against you, the point is that there's nothing here that says in the Seagate press releases, all it does, it promotes the Seagate product. It has nothing to do with anybody else's product at all. There are two points, Your Honor, that answer that. First is, under Waller v. Truck Insurance Exchange, 11 Calforth 1 at page 26, allegations that are groundless, false, or fraudulent trigger the duty to defend. It means nothing. That means nothing because you've got to go to the word of the allegation. I don't know what the allegation words were in that case. That's totally meaningless. It's black-letter law. I'm looking at these things. Suppose they're totally false. So what? They still don't say anything about Seagate disparaging Conval. Your Honor, the complaint does. The press releases. I understand that. But the point is you're saying they said things about us that are they said you said things about Conval that disparages them. I'm reading what you said in the complaint that you're relying on what they said, and there's no disparagement. Your Honor, what you're doing is you're looking at the press releases and what you're What else can I look at? The allegation of the complaint. I know, but the allegation of the complaint could say the moon's going to fall on us. It doesn't mean anything because we're talking about press releases. It means everything under California law, Your Honor. And again. Okay. Let me just clarify, Your Honor. They didn't allege exclusively in 61 and 65 that it was in those press releases where we disparaged. What they say is based on the press releases, Seagate is claiming that it's technology. How would you disparage if you didn't do it in a press release? You would do it in some other form, Your Honor, or in a different press release. Where is it alleged? Pardon me, Your Honor? Where is it alleged? Let me make something else clear, Your Honor. We deny that we did this. These are false accusations, but we still get a defense. What you're saying, Your Honor, is, in effect, their accusations are not true. Therefore, we don't get a defense, but we do. Say they're totally false. I just still think there's no allegation of disparagement. It's my problem. I'm just sorting this out. Yes, Your Honor, but what you're saying, if I'm understanding Your Honor correctly, what you're saying is that the press releases don't contain the disparagement, but the complaint says, and that's what matters, the complaint says that we have disparaged. Now, the fact that they said you could cause market confusion, how would you cause market confusion if you didn't publish it, and the only thing in the complaint I can find are these press releases? Your Honor, they say in paragraph 61 that we disparaged, and then they point to the allegation of market harm. If you put those two together, it's quite clear that they are alleging that somewhere we did it, and that's all we need to trigger the duty to defend. Well, let's hear from the other side. You're over time. We took you over time, and then we'll give you a minute to respond. I'm sorry. No, no, it's okay. We're going to let everybody get everything they need to say and all the questions they need to ask, so not to worry. Good morning, Your Honors. My name is Archie Robinson with the law firm of Robinson and Wood. I represent American International Specialty Lines Insurance Company, hereafter ASLIC. ASLIC issued a policy called the Technology Policy that was intended to cover technology services rendered for others and the failure of technology products causing third persons to suffer harm. What the appellant seeks to do is morph this policy into protection against liability for stealing the secrets and infringing the patent of another. And Judge Ware got it right, that when you look at this entire record, all of the actions against Seagate contain a nucleus of operative facts that speak to misappropriation and patent infringement. He's trying to separate out this trade libel, and he talks about the fact that there's going to be public confusion. So it seems to me, if you're going to get to where they want to go, somewhere in a complaint, we've got to see how this confusion is spread out. And so that's why, did I miss something in these complaints? I read those three press releases, and that's the only thing I can see publicly. Now, maybe underneath, somebody's doing something. I don't know. Actually, you put your finger right exactly on the point, which is there were only two press releases, by the way, and each press release contained considerable puffery about Seagate's product, but nary a mention of Convolve or Convolve's technology. Now, the essence of disparagement is to denigrate, to criticize, to depreciate somebody else's product or technology. How can you denigrate something that's not mentioned? Mr. Robinson, that's true as to 59 through 61, but paragraph 65 of the amended complaint is Convolve's allegation that based on its press release, Seagate is claiming that its technology performs the same functions as Convolve's proprietary technology, period. Why isn't that by itself, without anything else, a sufficient claim to invoke the grant of coverage as to advertising injury? A very simple answer. The law requires that an opponent on a motion for summary judgment come forward with facts that show that there is a genuine issue of material fact to be decided by the jury. Now, the allegation of, quote, disparagement is not a fact. It's somebody's opinion. And when we want facts that there has been disparagement, we have to go to the source of the allegation of disparagement to which the press releases. Now, that's not right. Let me read the sentence that Judge Bea just read. We're always faced with the odd thing in these cases where we're reading the complaint of somebody who's not here. So I can't complain to anybody that you misdrafted it because the somebody you drafted isn't here. And so, I mean, it's just chronic with these cases. But, okay, nonetheless, I'm now reading the first paragraph, first sentence of paragraph 65. Third, based on its press releases, Seagate is claiming blah, blah, blah. Now, it doesn't say in its press releases. It's saying based on its press releases. In other words, it's making these claims, and it may be waving the press release around that says, see, right in here it says. And then they may say, well, okay, this is what's in it. But also, they may be saying other things. So based on its press releases merely means that they're sort of waving the press release around as they're talking, as they're making the claims. Now, Seagate is claiming that its technology performs the same functions. Now, if the sentence said, third, Seagate is claiming that its technology performs the same functions as Convol's proprietary technology, even though that technology is inferior. Would that be disparagement? Scalia. Well, to the extent that the reference of the other's technology is inferior, yes. But the point, that's my whole point about this disparagement. The fact of disparagement cannot be created out of whole cloth. You have to show a press release that disparages in order to have a fact of disparagement. Kagan. Well, you've gone back into the press release. I'm asking you, what if the complaint merely said, Seagate is claiming that its technology performs the same functions as Convol's proprietary technology. However, Convol's technologies are superior. What if that's all the complaint said? Is that disparagement? Is that an allegation of disparagement, I should say? That would not be disparagement. Why not? Because Convol's technology is characterized as superior in your hypothetical. No. And therefore, it's not denigrating Convol's technology by calling it superior. If I'm understanding. No, you misunderstood the sentence I just gave you. The sentence I just gave you is, third, Seagate is claiming that its technology performs the same function, even though it does not, and even though Seagate's is inferior. That sounds like disparagement to me. Is that disparagement? The allegation by Convol that Seagate's technology is inferior would be disparagement on its face, if that occurred. There's an allegation by Seagate that its technology is better than Convol's, And the allegation is that Seagate says theirs is the equivalent, but Seagate's lying. Now, that sounds like disparagement to me. And what the argument you have is, but read the press release. But what I'm saying is the sentence, as I read it, doesn't say that the disparagement is limited to what's in the press release. I quite agree with that. And all I'm saying is that if we're looking for disparagement as a means of finding a duty to defend, we have to have a fact of disparagement. We have to have some evidence that there was disparagement. We have to have an allegation. Yes, an allegation of disparagement. Well, but Seagate is claiming that that's a fact. Seagate is claiming. I mean, not that its product is superior or equal to Convol's, because Convol does not mention anywhere. What we have is an allegation. Correct. But that's what we've been over this course. But now what I'm really after is the distinction. And that's what I'm trying to get at. I'm trying to get at the fact that this allegation couldn't proof be adduced at trial, that at a meeting, an officer of Seagate waved some press releases at the crowd and said, we're claiming that our technology performs the same functions as Convol's proprietary technology and Convol's is inferior. That evidence would be relevant under these allegations. It would come in. And even though the press release didn't say that, well, isn't that what the allegation of Convol? The allegation of Seagate in this lawsuit is that there is a duty to defend because there was a disparagement. Because there was a claim of disparagement, not disparagement. Well, disparagement is conduct. It is a statement. A statement. A plaintiff claims that the defendant was negligent. Doesn't have to be. Whether he is negligent or not, you still have to defend him under the auto policy, right? Yes. And I'm not addressing whether the disparagement is valid or not, which I think is the essence of your point. What I'm saying is that based on what is in front of us, there was no disparagement. That's point number one, because there was no reference to Convol or its technology or that Seagate's was better in the press releases or any other place. All that we have is the allegation and the complaint is that Convol believes that this appropriated technology was being used by Seagate and by Seagate saying that its technology did something that it didn't, there was somehow a disparagement of Convol. What do you do about the answer to the interrogatory that Convol claims Seagate had embarked on a campaign to prevent Convol from profiting on its product by, quote, falsely disparaging Convol's image and its technologies? That fact, like other facts, when brought home to the insurer by the insured, may trigger the duty to defend regardless of what the complaint says, correct? Well, of course. This party, Seagate, is being defended, and there is no limitation on the cost of defense. From the time that AIU accepted the defense after the complaint was amended, all defense costs have been undertaken by the carriers. And so Seagate has been defended fully. No. Two carriers being AIU and National Union. But if I think Let me push this a little bit further here. As I understand the exclusion, I'll read from it, if this is the correct one. You will not cover claims arising out of any alleged or actual infringement. Alleged or actual infringement of patent or misappropriation of trade secret. Now, in paragraph 65, the wonderful paragraph 65, it says, third, based on its press releases, Seagate is claiming that its technology performs the same functions as Conval's proprietary technology. Now, there's a comparison, not in a press release, okay? But the next word is, however, upon information and belief, Conval's disk drive technologies are superior to those of Seagate, notwithstanding that Seagate has misappropriated Conval's technology in developing SBT. Is that arising out of? It clearly is. Because but for the misappropriation, there would not be any reference point for that statement. But for. Because it seems as though they're saying, you're crazy because you're saying you're like us, but you misappropriated my technology. And they basically conceded the basis for the exclusion by saying the misappropriation. This policy, let's put public policy to the side. Public policy is very clear that you can't insure against your willful misconduct. But let's put that public policy to the side. We have a technology policy that was intended to cover liability arising out of the rendering performance of technical services for others or technology products that failed to perform as intended that caused harm to others, not to protect against stealing trade secrets. And so when we come to this essence of arising out of, the reason why those cases and there are three cases actually, the Continental Casualty v. City of Richmond, the Acceptance Insurance v. Sciufi, and the Turner case, they all deal with this question of the nexus of arising out of and the scope of what that means. And to the extent that everything that can be identified as unlawful against Seagate arises out of this nucleus of facts that relate to misappropriation, clearly there's no coverage. I find some similar facts in the Microtech Research v. Nationwide Mutual Insurance Company case. Are you familiar with that case? It's a Ninth Circuit case, 1994. But you don't have to make, we don't have to go into it. I just found some, it's got some interesting facts which are closely to this one. With apologies, Your Honors. I'm coming to this case after my partner, John Winchester, left the office, after it was totally briefed, and so I'm picking up somebody else's brief. I would have emphasized the fact that there's a legal doctrine that covers this precise situation that's dispositive, and that's the preemption doctrine of the trade secret, which says that if the nucleus of facts all relate to the misappropriation, then the common law causes of action are preempted. But that wasn't briefed, and I'm not making that argument. But that's basically what Judge Ware said without articulating those words. This is a case all about misappropriation. And therefore, it arises out of that, and therefore, there's no coverage. And I'll be pleased to respond to or maybe I should address the one point that was made in passing, that there somehow is a difference between proprietary information or confidential information and trade secret information. We know, of course, that trade secret information must be confidential in order for it to be a trade secret. We know, however, that all confidential information need not be trade secret if that confidential information does not have independent economic value as a result of being kept secret. And therefore, if confidential information has been misappropriated, which does not constitute a trade secret, then there would be no actionability for it. There would be no damage, because misappropriating confidential information that has no value can cause no damage. This policy insures the insured for claims of damage. Are there any other questions that I could assist the Court? Roberts, I think not. Thank you. Thank you very much. My pleasure. Would you like a minute in response? I have a couple of quick points. First of all, it's the defense costs haven't been paid in full, but that's not of record anyway. Also, fundamentally, what they're saying is that we didn't do it. We didn't do it, but we need their help in defending because we've been sued. Convolve and MIT say Seagate disparaged, and Seagate's entitled to a defense. The most important error in counsel's argument is the idea that it's necessary to go to the facts. At this stage, the facts are irrelevant. What matters is only the allegations. We don't have to show something that says we did what we're accused of. All we have to show is that it is alleged that we did. Finally, if I heard counsel correctly, he acknowledged what we've been saying all along about paragraph 61 and 65, that they say more than that it was in the press releases. They say, the plaintiffs in the underlying case, say based on the press releases. That's a very important difference. Thank you. OK. Thank both sides for a useful argument in American International Specialty Lined Insurance Company versus Seagate Technology. That case is now submitted for decision.
judges: Brunetti, W. Fletcher, Bea